

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TARA SMITH,<br><br>      Plaintiff<br><br>v.<br><br>GREYSTONE ALLIANCE LLC,<br><br>      Defendant. | No. 09 C 5585<br><br>The Honorable William J. Hibbler |

## MEMORANDUM OPINION AND ORDER

In June 2010, the Court granted Plaintiff Tara Smith's motion to certify a class in this Fair Debt Collection Practices Act case. Both parties ask the Court to reconsider its decision in certifying the class. To be frank, the parties' arguments do little more than rehash arguments made in support of or opposition to the original motion. The Court presumes familiarity with its June 2010 order and does not repeat the factual background contained therein.

### I. Smith's Motion

Smith asks the Court to revise its class certification order to certify the class as an "issue class" pursuant to the authority provided in Fed. R. Civ. P. 23(c)(4). Rule 23(c)(4) gives courts discretion to allow a claim to be "brought or maintained as class action with respect to particular issues," where appropriate. Fed. R. Civ. P. 23(c)(4). Smith contends that because Greystone has a purportedly low net worth and because the FDCPA limits class recovery to a percentage of a company's net worth that proceding under Rule 23(c)(4) is necessary. Smith contends that Greystone did not object to the certification of an issue class and that an issue class is needed to

1

avoid Greystone's attempt to force the class members to resolve their claims too cheaply. But although Smith raised the idea of an issue class in her motion, she did so only in two short paragraphs in her motion, essentially doing little more than citing a case that discusses Rule 23(c)(4) and mentioning Greystone's net worth. Smith never presented an argument in her brief in support of her motion as to why such treatment is appropriate. In fact, in her brief Smith never mentions Rule 23(c)(4) at all. In essence, Smith provided the Court with no explanation as to why the certification of an issue class was appropriate and cannot claim that Greystone waived any objection to her argument. If anything, Smith herself waived the argument by failing to develop it the first go around. The Court will nonetheless address the merits of Smith's Motion.

Rule 23 does allow courts to "devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). Among other things, courts may bifurcate liability and damage trials or appoint a magistrate judge to preside over individual damages proceedings. *Id.*; *see also Pella Corp. v. Saltzman*, 606 F.3d 391, 395 (7th Cir. 2010). Regardless of whether the Court bifurcates the liability and damage portion of the trial, statutory damages are capped at the lesser of $500,000 or 1% of Greystone's net worth. 15 U.S.C. § 1692k(a)(2)(B).[1] In cases in which Rule 23(c)(4) was employed to bifurcate the issues of liability and damages, the reason such bifurcation was necessary was due to variability among actual damages suffered by individual class members. *See Pella Corp.*, 606 F.3d at 395 (noting that class members were affected differently by defective

---

[1] To hold otherwise would be to allow plaintiffs to proceed as a class for liability purposes and then use Rule 23(c)(4) to get around the class damages cap imposed by the FDCPA, effectively writing the language out of the statute. Courts must give effect to every clause of a statute rather than emasculate an entire section of the statute. *Bennett v. Spear*, 520 U.S. 154, 173, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997)

2

windows); *Carnegie*, 376 F.3d at 661-62. Thus, only if potential class members have suffered varying degrees of actual damages does certification of an issue class make sense. Smith, however, has made no argument that individual class members are likely to have suffered actual damages at all, let alone that those damages would be so vastly disparate that the court should engage in an individualized examination of those damages. In short, even in her second bite at the apple, Smith makes no real argument that application of Rule 23(c)(4) is appropriate, and the Court DENIES her motion to alter the class certification order.

## II. Greystone's Motion

Greystone argues that the Court should reconsider its order because a class action is not a superior method of resolving the dispute, as required under Fed. R. Civ. P. 23(b)(3). In support, Greystone first suggests that the Court "did not contain any discussion of the superiority requirement." That suggestion, however, is inaccurate. In discussing whether the class issues predominated over individual issues, the Court observed the standardized conduct and noted that it was "hard-pressed to imagine a more clear-cut case where class treatment is appropriate." Admittedly, the Court did not use the term "superiority." The Court will clarify its statement.

Greystone argues that because Smith concedes that a class would not be a superior method for resolving a damage claim because of Greystone's low net worth. This argument misrepresents both Smith's concessions and Rule 23(b)(3) superiority requirement. Smith suggests that Greystone's low net worth *limits* the damages a class could recover, but does not conceded that a class action would be a superior method for resolving the class members' claims. When the class is large and the potential class recovery is small, a class action is more likely, not less, to yield substantial economies in litigation. The simple fact that class members face a potential *de minimis*

recovery does not automatically mean that a class action is not a superior method for adjudicating the claims. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). That is because the realistic alternative to this class action is not 1,000 suits, but none — for "only a lunatic or a fanatic" sues for a small amount. *Carnegie*, 376 F.3d at 661; *see also Mace*, 109 F.3d at 344 (observing that to launch an individual suit plaintiffs would have to be aware of their rights, willing to subject themselves to the burdens of litigation, and able to find an attorney willing to take their case). Moreover, even if the Court were to assume that individuals would not only become aware of their rights and Greystone's alleged violation of the FDCPA, be willing to litigate their claims, and be able to find attorneys to litigate their claims, "[i]t would hardly be an improvement to have in lieu of this single class action" more than 1,000 suits seeking statutory damages. *Carnegie*, 376 F.3d at 661. The Court holds that a class action is a superior method for adjudicating this dispute because the potential recovery to individual class members is so small.

Greystone also argues that the Court should reconsider its class certification order because it misconstrued certain facts. Greystone suggests that Smith inaccurately represented the content of the messages she received during the prior motion practice and that the Court inaccurately reported Greystone's message policy.

With regard to the content of the messages Smith received, it appears that not all of the messages that Smith received violated the FDCPA. Nonetheless, Greystone does not dispute that Smith received a message that did not identify Greystone as a debt collector. Moreover, much of the Court's reasoning — that Greystone had not presented sufficient evidence to demonstrate that the message Smith received was an aberration remains valid. Greystone does not explain whether the employee who left the message was disciplined or what policies it has in place to ensure that

employees follow a script that complies with the requirements of the FDCPA or how its affiant knows that its employees do follow its scripts. The fact of the matter is that Greystone chooses not to record or document its phone calls, and so cannot point to any evidence to demonstrate that the call to Smith was an aberration.

With regard to the Court's description of Greystone's policy, Greystone appears to be confused about multiple phone scripts. As the Court noted, Greystone does have one script that complies with the FDCPA and it has a second script that directs employees to "<u>only</u> state '<u>your name</u>,' '<u>toll-free phone number</u>', and '<u>file number</u>.'" Greystone insists that its policy was for its employees to "state in all messages that they were calling from Greystone." But the exhibit cited in the Court's opinion (and again in Greystone's motion to reconsider) directs employees to state nothing other than their name, a toll-free number and a file number. The Court DENIES Greystone's Motion to Reconsider.

IT IS SO ORDERED.

1/25/11
Dated

Hon. William J. Hibbler
U.S. District Court

5