

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TARA SMITH, ) | |
| ) | |
| Plaintiff ) | |
| ) | No. 09 C 5585 |
| v. ) | |
| ) | The Honorable William J. Hibbler |
| ) | |
| GREYSTONE ALLIANCE LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Tara Smith alleges that Greystone Alliance LLC violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*, when it failed to identify itself as a debt collector as required by § 1692e(11) and when it had contacted her business partner in violation of § 1692c(b) § 1692d. The Court previously granted Smith's motion to certify a class in connection with her § 1692e claim. Both parties move for summary judgment.

### I. Factual Background

On August 13, 2009, Greystone mailed Smith a collection letter concerning a credit card debt belonging to her that had been placed with Greystone for collection. (Def. 56.1(a)(3) St. (Def. St.) ¶¶ 44-45). That letter identified Greystone as a "debt collector" and informed Smith that the letter was an attempt to collect a debt and that any information she provided would be used for that purpose. (Def. St. ¶ 45). Although Smith received the letter, the record does not reflect the date she received it. (Smith Dep. at 68-69).

1

The next day, a Greystone employee, Andre Garner, called Smith's residential telephone and left a voice message for her. (Def. St. ¶ 47). In that message, Garner identified himself by name and informed Smith that he represented Greystone. (Def. St. ¶ 49). Garner did not, however, inform Smith that Greystone was a debt collector. (Def. St. ¶ 49). Rather, he simply stated his name, his employer's name, provided a phone number, and asked her to return his call "in regards to a file that has been placed in [his] office." (Def. St. ¶ 49).

Shortly after leaving a message on Smith's home answering machine, Garner attempted to contact Smith at a telephone number ending in 2882. (Pl. 56.1(b)(3)(B) St. (Pl. St.) Ex. 2). Garner was unable to reach Smith at the number and changed its status from unknown to bad. Garner then attempted to contact Smith at a telephone number ending in 7876. (Pl. St. Ex. 2).[1] Garner left a message at the 7876-number. (Pl. St. Ex. 2). A few minutes later, Oneta Sampson, who was Smith's

---

[1] Greystone asserts that Garner identified the number through a database as being associated with Smith's business. Smith disputes this assertion and states that the database revealed that the number in fact belonged to Sampson. Both parties direct the Court to the Greystone's Account History record for Smith. That record, however, does not support either parties' assertion. See Pl. St. Ex. 2; Def. St. Ex.2(J). The action code given by Garner is that he "skipped accurint" and the result of the action is that he "found information." It then lists an address and Oneta Sampson's name in a comment section and states that the 7876-number may be an alternate number for Smith. Pl. St. Ex. 2; Def. St. Ex.2(C, J). To conclude that Garner obtained the number via an accurint search, the Court would have to infer that "skipped accurint" means to perform an accurint search. Unfortunately, Greystone fails to take the time to make their internal jargon clear. Similarly, to conclude that Garner knew the number belonged to Sampson or that he believed it to be a number associated with Smith's business prior to his call, the Court would have to infer what the accurint search revealed. But neither party points the Court to testimony from Garner regarding the search or to records of the search itself. Despite the parties' insistence that the Court should hazard guesses into Garner's state of mind from a jargon-filled document, the Court cannot do so. The parties' mutual reliance on a document that does not clearly support their assertions and their failure to make plain the meaning of that document is not an isolated incident. In fact throughout the summary judgment materials, as will become clear, neither party accurately describes or makes clear the record, thus making the Court's task in resolving this motion substantially more difficult.

business partner, returned Garner's call. (Pl. St. Ex. 2). According to Sampson, she asked Garner why he had called. (Sampson Dep. at 12). Garner informed Sampson that his call related to a personal matter. (Sampson Dep. at 12). After learning the nature of his call, Sampson told Garner that he could not reach Smith, her business partner, at that number. (Sampson Dep. at 12). According to Sampson, Garner retorted that Sampson should "know who [she is] doing business with." (Sampson Dep. at 12).[2] Moreover, Garner did not update Greystone's files to indicate that the 7876-number was not a number at which he could contact Smith. Instead, Garner added the 7876-number to Greystone's records. (Pl. St. Ex. 2).

Later that evening, Smith returned Garner's call. (Def. St. ¶¶ 57-58). Garner discussed with Smith the debt Greystone was attempting to collect. (Def. St. ¶¶ 57-58). According to Smith, Garner also informed her that he had spoken with Sampson about the debt and that she was not pleased. (Smith Dep. at 32). After Smith told Garner that she was not able to pay the debt at that time, Garner informed Smith that her account was being documented as a refusal to pay. (Def. St. ¶ 58).

On August 17, Smith twice called Greystone to speak with Garner. (Def. St. ¶¶ 59-60). During the first call, Smith requested information so that she could send payments. (Def. St. ¶ 59). After making the first call, Smith called back ten minutes later to request Garner's name and terminated the conversation after yelling at him. (Def. St. ¶ 60).[3]

---

[2] Smith further asserts that Garner told Sampson that he was calling about Smith's account with Chase Bank. Smith, however, points only to her own deposition, where she reports what Sampson told her about Garner's call. (Smith Dep. at 28). Of course, Smith's account of what Sampson told her is hearsay and not admissible on summary judgment.

[3] Smith disputes these facts, which Greystone supports by pointing to the Account History log (Def. St. Ex. 2(J)). Smith points only to page 19 of her deposition in support of her dispute,

3

The next day, August 18, another Greystone employee, Michael Raylea, left an automated message on Smith's residential answering machine. (Def. St. ¶ 61; Smith Dep. at 63). Raylea, like Garner, informed Smith of both his and Greystone's names, but did not inform her that Greystone was a debt collector. (Def. St. ¶ 61). On August 19, Greystone left an automated message at the 7876-number (Pl. St. Ex. 2). On August 21, Victoria Pearson left a message at the 7876-number. (Def. St. ¶ 63; Pl. St. Ex. 2). Pearson, like Raylea and Garner, informed Smith of her and Greystone's names, but did not inform her that Greystone was a debt collector. (Def. St. ¶ 63). Sampson returned Pearson's call and again informed Greystone not to call that number in the future. (Sampson Dep. at 14-15).

Greystone continued to call Smith over the next several weeks. (Def. St. ¶¶ 66-69). When it called, Greystone sometimes left an automated message, sometimes left no message, and sometimes had its employee leave a live voice message. (Def. St. ¶¶ 66-69). Only the automated message identified Greystone as a debt collector. (Def. St. ¶¶ 66-69).

Greystone trains its employees regarding compliance with the FDCPA and its internal policies and procedures. (Def. St. ¶ 14).[4] Among other things, Greystone employees must pass a

---

which contains no information to support an inference that she did not make such calls or that they did not transpire as Greystone describes. (Smith Dep. at 19).

[4] Smith disputes this statement, arguing that it is "self-serving." However, most affidavits are self-serving, but the Court cannot denigrate that evidence or otherwise disregard it if it is based on personal knowledge. *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006). Smith also points to Exhibits B-F to the affidavit, without describing how those exhibits place Greystone's asserted fact in dispute. Local Rule 56.1 requires a party to cite to specific portions of a record that support the party's position, and the Court will not sift through the record to make her arguments for her. Local Rule 56.1(b)(3); *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir. 2010). To the extent that Smith fails to point the Court to a specific portion of the record to place a material fact in dispute, the Court will deem Greystone's fact to be admitted.

written examination regarding FDCPA requirements. (Def. St. ¶ 21). To ensure compliance with the FDCPA and its internal policies, Greystone employs a Call Monitoring Program and Remedial Response Process. (Def. St. ¶ 32). Pursuant to that policy, Greystone monitors a minimum of six calls per month made by each of its collectors and nine calls per month made during a collector's first month of employment. (Def. St. ¶¶ 34-35). If Greystone determines that a collector has violated the FDCPA, it monitors that employee as if the collector were newly hired. (Def. St. ¶ 36). Greystone also employs a progressive discipline policy for collectors who repeatedly violate the FDCPA, which can lead to termination. (Def. St. ¶¶ 37-41).[5]

Greystone utilizes several scripts that its employees follow when leaving voice messages for debtors. (Def. St. ¶ 26). From March 2009 to September 2009, Greystone required its employees to use the "Greystone Alliance Foti Message" when making a first attempt to contact a debtor and on any additional attempt to contact the debtor until a "right party contact" had been established, pursuant to its Foti Message Policy. (Def. St. Ex. 2(F) at GRY005). The Foti Message Policy states that "[t]he Greystone Alliance Foti Message <u>does not</u> need to be used when: [r]ight party contact <u>has been established</u> with the debtor . . . [and that] at this point, any future messages should <u>only</u> state "<u>your name</u>," "<u>toll-free phone number</u>" and "<u>file number</u>." (Def. St. Ex. 2(F) at GRY005) (emphasis in original). The Foti Message Policy thus clearly directs employs to mention neither that the caller is calling on behalf of Greystone nor that Greystone is a debt collector once a right party contact has been established. (Def. St. Ex. 2(F) at GRY005). Greystone considers a "right party contact" to be

---

[5] Smith disputes these statements by arguing that the callers who left messages with her were not disciplined for calls made to her, pointing to Frisicaro's deposition. Frisicaro, however, testified only that Garner was not disciplined because he stopped working for Greystone prior to Greystone learning of his infraction. Thus, Smith points to no evidence in the record to dispute Greystone's assertion.

established when its employee confirms that a specific telephone number belongs to the debtor it is attempting to contact. (Def. St. ¶ 28).

Greystone, however, does not clearly identify its Foti Message. Following the Foti Message Policy are four scripts that Greystone employees follow. (Def. St. Ex. 2(F) at GRY006-008). Although its Foti Message Policy provides guidance concerning when its Foti Message should be used, Greystone nowhere clearly identifies which of the four scripts is the Foti Message, and thus it is not clear when any of these scripts should be used. To the extent that Greystone has failed to make clear its own policies, the Court will draw inferences favorable to whichever party is the non-moving party based upon the plain language of what it describes as its "Foti Message Policy." (Def. St. Ex. 2(F) at GRY005).

None of the four scripts that follow the Foti Message Policy is titled as Greystone's "Foti Message." Rather, they are titled: "Message for Answering Machines," the "Greystone Script," and "Foti Script for Live Answer with Hot Key" and "Foti Script for Machine Messages." (Def. St. Ex. 2(F) at GRY006-008)). Each of the scripts requires its employee to identify Greystone and make clear that the call is being made in an attempt to collect a debt (and so perhaps each of the scripts, which contains the required disclosures for an initial communication, is a variant of its Foti Message). (Def. St. Ex. 2(F) at GRY006-008). Each of the scripts, though, directs an employee to provide more information than Greystone's Foti Message Policy requires them to provide once a right party contact is made, and so they are not the scripts that Greystone utilizes in subsequent communications with a consumer. (Def. St. Ex. 2(F) at GRY005-008). After a right party contact

6

is made, employees are directed to provide only their name, the file number, and a toll-free number to return the call. (Def. St. Ex. 2(F) at GRY005).[6]

It is clear that none of the Greystone employees followed any of the scripts when contacting Smith. Moreover, it is also clear that although each of the employees identified himself or herself as a Greystone employee, contrary to the direction in Greystone's Foti Message Policy for calls made after a "right party contact," none of the collectors ever explained to Smith that Greystone is a debt collector. Finally, it is clear that Greystone's Foti Message Policy does not require callers to identify Greystone as a debt collector after a "right party contact" is made.

## II. Standard of Review

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct., 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of demonstrating there is no genuine issue of material fact, and judgment as a matter of law should be granted in their favor. Fed. R. Civ. P. 56(c). Once the moving party has met the initial burden, the nonmoving party must then "go

---

[6] Greystone continues to insist that its policy requires its collectors to identify Greystone by name. In support Greystone points to its Foti Message Policy, which as noted above does not direct employees to mention Greystone by name after a right party contact. (Def St. Ex. 2(F) at GRY005). Greystone also points to Frisicaro's affidavit, in which he states that Greystone collectors are required to identify Greystone in every call. Frisicaro's affidavit contains nothing but a bald, self-serving, conclusory statement that not only is without factual support in the record but conflicts with very documents that Frisicaro identifies in support of that statement. Rule 56 demands more than the bald assertion of a general truth and to the extent that Frisicaro's conclusory assertion contains no details and conflicts with the documents he himself relies upon in making that statement, the Court will disregard it. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001).

beyond the pleadings" and "designate specific facts showing that there is a genuine [material] issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party must offer more than a mere scintilla of evidence to survive summary judgment, and conclusory allegations are insufficient to defeat a motion for summary judgment. *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir.2005). During the Court's review, it must view all evidence and inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. When a court reviews cross-motions for summary judgment, it applies this standard to both motions; in other words, it must view all facts and draw all reasonable inferences in a light most favorable to the party against whom the motion is made. *Tate v. Long Term Disability Plan for Salaried Employees of Champion Int'l Corp. # 506*, 545 F.3d 555, 559 (7th Cir.2008).

### III. Analysis

*A.    Section 1692e(11) Claim*

Congress passed the FDCPA to curtail abusive debt-collection practices. *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 643-44 (7th Cir. 2009). The Act imposes strict liability on collectors, and a consumer need not show intentional or even negligent conduct by the debt collector to be entitled to damages. *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 995 (7th Cir. 2005). Section 1692e prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Among other things, § 1692e requires a debt collector to disclose in all communications other than formal pleadings made in connection with a legal action that the communication is from a debt collector.

8

15 U.S.C. 1692e(11). Smith claims that Greystone violated Section 1692e(11) of the FDCPA by leaving voice messages that do not disclose that the call is from a debt collector.[7]

The test for whether a communication violates a provision of the FDCPA is an objective one. *Id.* For purposes of determining whether a communication from a debt collector violates § 1692e, prohibiting false, deceptive, or misleading representations, courts ask whether the communication would deceive or mislead an unsophisticated, but reasonable consumer. *Wahl*, 556 F.3d at 645-46. The state of mind of a reasonable debtor, therefore, is relevant. *Id.* at 646. In order to deceive or confuse the unsophisticated consumer, the false, misleading or deceptive statement must be material. *Hahn v. Triumph P'Ship LLC*, 577 F.3d 755, 757 (7th Cir. 2009). The Seventh Circuit has held that FDCPA claims alleging deceptive or misleading statements fall into three categories: (1) statements that plainly on their face are not deceptive or misleading or where the false statement is immaterial; (2) statements that are not plainly misleading but extrinsic evidence, such as consumer surveys, might demonstrate that an unsophisticated consumer would be misled; (3) statements that are plainly misleading where extrinsic evidence is not necessary to prove what is already clear. *Ruth v. Triumph P'Ship*, 577 F.3d 790, 800-801 (7th Cir. 2009). This dispute, however, presents a wrinkle. Here, the alleged misleading statement is not a statement at all, but an omission.

---

[7] Smith also alleges in her Complaint this practice violates 15 U.S.C. § 1692f, which prohibits unfair practices such threatening to deposit post-dated checks prior to the date on the check. 15 U.S.C. § 1692f. Smith makes no argument in either her brief in support of her motion for summary judgment or her brief in opposition to Greystone's motion for summary judgment that § 1692f supports a claim based on the failure to identify the caller as a debt collector. The Court's own research uncovered no caselaw supporting a claim under § 1692f when a call fails to disclose it is being made on behalf of a debt collector. Consequently, the Court GRANTS Greystone's motion for summary judgment on the § 1692f claims on behalf of the class.

Greystone first argues that it has adequately disclosed that it is a debt collector and therefore has not in fact violated § 1692e(11). Greystone suggests that it identified itself as a debt collector in its initial communication and in subsequent communications identified itself by name. Greystone suggests that because it clearly identified itself as a debt collector in its initial communication that an unsophisticated consumer would not be deceived or mislead by any omission in its subsequent communication. In short, Greystone suggests that its omission falls into the first category of statements identified in *Ruth*, suggesting that the communication is on its face not deceptive because it previously disclosed it is a debt collector.

Greystone bases this argument on its assertion that a debt collector may comply with § 1692e(11) without a verbatim use of the term "debt collector," citing to *Epps v. Etan Indus., Inc.* to support its assertion. In *Epps*, the debt collector did not inform the consumer that it was a debt collector in subsequent communications, but instead made an express statement that it was attempting to collect a debt. *Epps*, 97 C 8770, 1998 WL 851488, at *9 (N.D. Ill. Dec. 1, 1998). The court held that the context of the letter itself supplied the information required by § 1692e(11). *Id.* In other words, the court concluded that given that the debt collector expressly informed the consumer that it was attempting to collect a debt that its letter would not confuse an unsophisticated consumer about its status as a debt collector. *Id.* In this sense, the omission in *Epps* falls squarely into the first category identified by *Ruth*, as one that on its face would not deceive or mislead an unsophisticated consumer. *Ruth*, 577 F.3d at 800-01.

Greystone's omission, however, is not like that made by the debt collector in *Epps*. Unlike the communication in *Epps*, the context of Greystone's subsequent calls to Smith provided no clue as to its identity as a debt collector — none of the messages left by its employees referenced Smith's

10

debt and Greystone's name did not imply that it was a collection agency.[8] Instead, Greystone informed the consumer that it was a debt collector only in its initial dunning letter and asks the Court to conclude that the omission in its subsequent communications would not confuse or mislead the unsophisticated consumer.

Greystone's argument is not convincing. Section 1692e(11) requires certain disclosures in an initial communication to a consumer. It also requires similar, but less substantial, disclosures in subsequent communications, notwithstanding the fact that these disclosures were made previously in a collector's initial communication. 15 U.S.C. § 1692e(11). Under Greystone's theory, all a debt collector would ever have to do to comply with the "subsequent communications" prong of § 1692e(11) is to make the initial disclosures. That would effectively read the language requiring disclosures in subsequent communications out of the statute, which of course violates the most basic canons of statutory interpretation. *Bloch v. Frischholz*, 587 F.3d 771, 785 (7th Cir. 2009). The Court holds that making the disclosures required by § 1692e(11) in an initial communication does not relieve a debt collector from making the disclosures required by § 1692e(11) in subsequent communications. *See Garo v. Global Credit & Collection Corp.*, 2011 WL 251450, at *5 (D. Ariz. 2011) (rejecting argument that making initial disclosures under § 1692e(11) was sufficient to comply with requirement to make disclosures in subsequent communications); *Biggs v. Credit Collections, Inc.*, 2007 WL 4034997, *3 (W.D. Okla 2007) (same)

---

[8] In its brief, Greystone claims that Smith "admits that the [second] voice message she received from Greystone identified Greystone as a debt collector," citing to Paragraph 12 of Smith's response to its interrogatories. Smith, however, makes nothing close to such an admission, and Greystone's assertion that she has is without merit.

11

In a similar vein, Greystone next argues that even if its failure to identify itself as a debt collector violates § 1692e(11), it is not a material omission because Smith knew it was a debt collector. The factual predicate on which Greystone relies, however, is not accurate. Greystone argues that Smith knew it was a debt collector because it sent her a debt collection letter in which it informed her that she was a debt collector and that Smith acknowledged receiving this letter. But Greystone mailed the letter one day before it first called Smith and it is not reasonable to infer that she had received the letter by that point. Even if she had received the letter, nothing in the record suggests that Smith reviewed the letter prior to listening to the messages that Greystone left for her. Greystone also suggests that Smith knew that it was a debt collector because she discussed the debt with it after returning the first call. But whether Smith discussed her debt with Garner does not speak to the question of whether she knew Greystone was a debt collector when she listened to Garner's message. As noted earlier, Section § 1692e(11) requires disclosure of a debt collector's identity as a debt collector so a consumer is armed with that information prior to deciding whether to engage in any communication with the collector. Nothing in the record suggests that Greystone provided Smith with this knowledge prior to her returning Garner's call.

Moreover, it is not clear whether the omission is in fact immaterial. Materiality is an element of a federal claim based on a false or misleading statement, including claims arising under §1692e(11). *Hahn*, 557 F.3d at 757. *Hahn* sheds light on what kinds of false statements may be considered immaterial. *Id.* *Hahn* observed in *dicta* that if a debt collector had made a false statement regarding the color of the paper it used to communicate with consumers that the false statement would not be material. *Id.* A false statement about the color of paper (or about the line in which interest is reported, so long as it is reported accurately) harms no one and is not likely to

mislead a consumer about the nature or status of a debt. *Id.*; *see also Wahl*, 556 F.3d 643, 645-46 (7th Cir. 2009) (statement isn't false unless it would confuse unsophisticated consumer). In other words, the materiality of the misleading statement turns upon whether it impacts an unsophisticated consumer's ability to accurately assess the nature of their debt or their rights under the Act.

Section 1692e(11) requires a debt collector to identify itself as such to enable consumers to know they are in fact contacting a debt collector if they choose to return the call. If a debt collector fails to adequately disclose that it is a debt collector, the Court cannot see how that omission is anything but material to the question of whether an unsophisticated consumer would be confused about whether the caller was a debt collector. Nothing about Greystone's name would indicate to an unsophisticated consumer that it is a debt collector. In this sense, the omission is not like the false statement identified in *dicta* by *Hahn* regarding the color of paper used by a debt collector. That false statement simply is not relevant (and thus not material) to any of the enumerated criteria of § 1692e. Here, Greystone's omission is directly related to the requirements of § 1692e(11). Greystone does not argue that the context of its *subsequent* communications would enable Smith (or the unsophisticated consumer) to understand that it is a debt collector. Rather, Greystone argues that its *initial* communication provides the context to enable Smith (or the unsophisticated consumer) to understand that a subsequent communication was from a debt collector. As noted above, however, that nullifies the requirements of § 1692e(11) regarding subsequent communications.

The Court holds that the undisputed facts do not demonstrate that Greystone's failure to identify itself as a debt collector in its telephone communications to Smith does not fall in the first category of statements identified in *Ruth*, and therefore it is not entitled to summary judgment on that basis.

Greystone also argues that it is entitled to summary judgment because it has a *bona fide* error defense to the voice mail messages it left for Smith. Section 1692k(c) allows a debt collector to demonstrate that its violation was not intentional and resulted from a *bona fide* error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. 15 U.S.C. § 1692k(c); *Kort v. Diversified Collection Serv., Inc.*, 394 F.3d 530, 537-38 (7th Cir. 2005). For the *bona fide* error defense to apply, the debt collector must meet two requirements: (1) the error unintentional; and (2) the debt collector must have policies in place to prevent the error. *Kort*, 394 F.3d at 537-38; *see also Seeger v. AFNI, Inc.*, 538 F.3d 1107, 1114 (7th Cir. 2008) (observing in *dicta* that *bona fide* error defense applies to factual, not legal errors). Greystone's argument merits little discussion. It insists that any violations of § 1692e(11) were unintentional and that it has procedures in place to avoid violations of the FDCPA. But the policy in place here, clearly instructs its collectors to withhold information required by § 1692e(11). Greystone instructs collectors who are making calls after a right-party contact has occurred to mention only their name, a file number and a telephone number. (Def. St. Ex. 2(F) at GRY 005). Even if the Court were to assume that like the collectors who called Smith, Greystone's collectors typically reveal Greystone's name when making collection calls, nothing about Greystone's name identifies itself as a debt collector as § 1692e(11) requires in both initial and subsequent communications. Because Greystone's actual policy explicitly directs collectors to withhold information required by § 1692e(11), its error cannot be unintentional; nor can its policies be designed to prevent such errors. *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350 (11th Cir. 2009) (holding that *bona fide* error defense not available when collector made intentional decision to withhold disclosures required by § 1692e(11)).

Greystone has a final arrow in its quiver. It argues that the class claim is moot because it made a Rule 68 offer of judgment to the class. *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994) (plaintiff's claim mooted by offer of judgment to satisfy plaintiff's entire demand). Unlike a Rule 68 offer to a named plaintiff, which generally cannot be used to make a class action moot, *Wrightsell v. Cook County, Ill.*, 599 F.3d 781, 783 (7th Cir. 2010), Greystone offers a judgment it claims will exceed the maximum the class is entitled to recover. The FDCPA limits class recovery of statutory damages to the lesser of $500,000 or 1% of the debt collector's net worth. 15 U.S.C. § 1692k(a)(2). Greystone asserts that its net worth is $200,000 (and therefore its offer of $2,000 plus fees and costs to the class exceeds what the class could conceivably recover), but points to nothing in the record to support this assertion.[9] Without such evidence to support its assertion, the Court cannot assume that Greystone accurately states its net worth.

Moreover, once a class action is certified, the claims of the class may be settled only with the court's approval. The court must direct notice in a reasonable manner to all class members who would be bound by the proposal, must determine whether the settlement is fair and reasonable to the class members, must allow class members to object to the proposal, and must allow class members to request exclusion. Fed. R. Civ. P. 23(e). Greystone offers no details about the manner in which

---

[9] In its reply brief Greystone argues that it has "put forth evidence of its net worth in its motion." In its motion for summary judgment, Greystone merely incorporates its brief in support of the motion and its 56.1(a) materials. Greystone's 56.1(a) Statement contains 79 enumerated statements of fact. None of these statements relate to Greystone's net worth. Greystone's brief in support of its motion for summary judgment states that its "net worth . . . is far less than $200,000," but makes no citation to the record in support of that assertion. See <u>Greystone Br. in Supp. of Summ. J.</u> at 7. Greystone's assertion that it has "put forth evidence of its net worth" is simply not accurate, and the Court will not trudge through the record looking for evidence in support of Greystone's assertion where it has failed to direct the Court to a specific portion of the record. *5443 Suffield Terrace*, 607 F.3d at 510.

15

such notice would be provided, the manner in which the funds would be distributed to the class or the way in which claims would be processed, or the manner in which class members would become bound by the judgment. While the $2,000 plus fees and costs might exceed what the class could reasonably recover *as a class*, it does not necessarily exceed what the class members could recover if they chose to proceed individually. Thus, any resolution must afford class members some vehicle to assess the value of their claims relative to the proposed settlement. And yet, Greystone would have the Court bind absent class members to a judgment without the protections of Rule 23(e).

The Court finds that Greystone's Rule 68 offer, for which it points to no support in the record, does not moot the class claims.

The Court DENIES Greystone's Motion for Summary Judgment on Count I on both the individual and class claims.

Smith also moves for summary judgment on Count I. As noted earlier, the Seventh Circuit divides FDCPA claims under § 1692e into three categories. *Ruth*, 577 F.3d at 800-01. Smith argues only that Greystone did not comply with § 1692e(11) by failing to mention that it was a debt collector.[10] In other words, Smith suggests that the deceptive or misleading statement is "plainly misleading" and no extrinsic evidence is necessary to prove that the unsophisticated consumer would find it to be misleading. Greystone responds with the same arguments it raised in support of its summary judgment motion.

---

[10] Smith also appears to suggest that she brings a claim under § 1692d(6), and that she is entitled to summary judgment on this claim. Smith, however, raised no such claim in her Complaint, and cannot amend her claim in her summary judgment briefs to press it now. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 709 n.2 (7th Cir. 2011).

The undisputed facts demonstrate that when Greystone first called Smith, it failed to communicate to her that it was a debt collector. Although it had sent a letter to her, it is not reasonable to infer that Smith received the letter prior to Greystone's first call. Moreover, the fact that Smith discussed her debt with Greystone when she returned the call cannot demonstrate that she knew Greystone was a debt collector prior to making that call. Rather, Greystone was required by § 1692e(11) to make clear it was a debt collector when Garner left a message for her. That message, however, mentioned only Greystone's name. Given that Greystone did not identify itself as a debt collector, the Court concludes that its statement is "plainly misleading." No unsophisticated consumer could determine that Greystone was a debt collector — which § 1692e(11) requires it to disclose — based solely on a telephone message that informs a consumer that the call is from "Greystone Alliance." Thus, Smith is entitled to summary judgment on her § 1692e(11) claim.

Greystone opposes Smith's motion for summary judgment on the class claim on the basis that Smith has offered no evidence regarding calls to any other class member. But of course, Smith could not offer any such evidence because Greystone does not retain even a sample of the calls it places. Moreover, as noted earlier, Greystone's policy *on its face* does not comply with § 1692e(11). It directs collectors to withhold even Greystone's name on subsequent calls. Even if collectors do state Greystone's name, nothing about that name provides any indication that Greystone is a debt collector. While Greystone might leave a *Foti* message that complies with § 1692e(11) on its initial calls to consumers, its policy on subsequent calls to consumers explicitly violates the disclosure requirements of that subsection. And as noted earlier, to suggest that it can comply with § 1692e(11) by relying on an initial communication reads the language of that subsection requiring disclosures on subsequent communications out of the statute. Contrary to Greystone's argument, there is

17

evidence in the record — its own policy — that suggests that it has made communications to the class that violate § 1692e(11).

Accordingly, the Court GRANTS Smith's Motion for Summary Judgment on Count I on both the individual and class claims.

B.  Section 1692c(b) & 1692d Claims

The parties' respective summary judgment motions on Smith's individual claims needs little discussion. Smith's § 1692c(b) and § 1692d claims are based on the three calls Greystone made to Sampson. In particular, Smith argues that Greystone violated the act when it threatened to disclose information about her to Sampson. In addition, Smith alleges that Garner told her that "Sampson was not pleased with her regarding this matter."

The FDCPA does not bar all communications from a debt collector, but only those that arise "in connection with" an attempt to collect a debt. 15 U.S.C. §§ 1692c, 1692e, 1692g. Greystone argues that it did not discuss the debt with Sampson and therefore did not violate § 1692c(b), relying on the definition of communication in § 1692a(2). That definition, however, defines communication as the conveying of information regarding a debt *directly or indirectly* to any person through any medium. 15 U.S.C. § 1692a(2). The Seventh Circuit has thus left open the question of whether a debtor need to explicitly discuss a debt to violate § 1692c(b). *Horkey v. J.V.D.B. & Assoc., Inc.*, 333 F.3d 769, 775 n.2 (7th Cir. 2003). Moreover, in determining the reach of the FDCPA, including the reach of § 1692c(b), the Seventh Circuit has held that an explicit demand for payment is not necessary for a communication to qualify as one made in connection with the collection of a debt. *Gburek v. Litton Loan Serv., Inc.*, 614 F.3d 380, 384-86 (7th Cir. 2010). Rather, whether a communication is made in connection with the collection of a debt turns upon whether it is designed

to cause the debtor to settle or discuss the debt. *Id.* (citing *Horkey*, 333 F.3d at 772-74; *Ruth*, 577 F.3d at 798-99).

Thus, the question for the Court is whether Smith's allegation that Garner told Sampson that she should "know who she is doing business with" is sufficient to indirectly convey information about Smith's debt to her. The Court holds that it is. A reasonable interpretation of Garner's alleged comment to Sampson is that Sampson should investigate Smith's trustworthiness or Smith's financial ability to engage in a joint business venture. As such, it is reasonable to conclude that Garner's comment to Sampson was designed to cause Sampson to question Smith about the comments or to pressure Smith into paying the debt. Even if it were not, Smith also alleges that Garner told her that Sampson was not pleased with her, from which a jury could infer that he told Sampson about Smith's debt. Whether Garner made these statements to Smith, however, is disputed, and therefore neither side is entitled to summary judgment. With regard to Smith's § 1692c(b) claims, the Court DENIES both Smith's and Greystone's motions.

Greystone's argument regarding Smith's § 1692d claim borders on frivolous. Greystone suggests Smith's entire basis for this claim is "the number of phone calls and tactics they [sic] used to collect a debt." Greystone then proceeds to discuss only the number of phone calls it placed to Smith, while ignoring, even in its reply, her claim that the tactics it used violated § 1692d. Section 1692d prohibits a debt collector from engaging in conduct designed to harass, oppress, or abuse a person in connection with the collection of a debt. 15 U.S.C. § 1692d. Certainly, if a jury concluded that Garner's comments to Sampson were designed to fracture Smith's business relationship that is a tactic designed to harass, oppress, or abuse Smith in connection with Greystone's effort to collect a debt. As noted earlier, the nature of Garner's call to Sampson is disputed, and therefore summary

19

judgment is not appropriate on this claim. The Court therefore DENIES both Smith's and Greystone's motions with regard to her § 1692d claim.[11]

IT IS SO ORDERED.

3/29/11
Dated

Hon. William J. Hibbler
U.S. District Court

---

[11] Greystone argues that Smith has not adequately documented the emotional distress she claims to have suffered, relying on conclusory allegations. The Court finds that Smith has adequately described the emotional distress she suffered. See Smith Dep. at 40-56.