# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

TARA SMITH,

    Plaintiff,

v.

GREYSTONE ALLIANCE, INC.,

    Defendants.

No. 09 C 5585

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Tara Smith filed this case on September 9, 2009, and alleges that Greystone Alliance, Inc., violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, when Greystone (1) left her voice-mail messages about a debt and failed to disclose that Greystone was a debt collector (Count I alleging violations of §§ 1692e and 1692f); (2) communicated with a third party about Smith's debt (Count II alleging violation of § 1692c(b)); (3) harassed Smith about the debt (Count II alleging violation of § 1692d); and (4) used deceptive means to attempt to convince Smith to pay the debt (Count II alleging violation of § 1692e). *See* R. 1. On March 29, 2011, the Court (1) granted summary judgment to Greystone on Count I as it pertains to § 1692f; (2) granted summary judgment to Smith on Count I as it pertains to § 1692e; and (3) denied summary judgment to both parties on Count II. *See* R. 104 (2011 WL 1303377 (N.D. Ill. Mar. 29, 2011) (Hibbler, J.)). Greystone now moves to dismiss both Counts I and II pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that settlement offers Greystone made to Smith during the course

of the litigation moot her claims and deprive the Court of subject-matter jurisdiction. R. 178. For the following reasons, Greystone's motion is granted.

On November 17, 2009—about two months after Smith filed her complaint, and seven days before she filed a motion for class certification—Greystone offered Smith $1,500 to settle both counts of her complaint. R. 178-1 at 10-14. Until Greystone filed this motion to dismiss on June 17, 2013, the last time a party or the Court referenced the November 17, 2009 settlement offer was more than three years ago on June 30, 2010, when Judge Hibbler certified the class. R. 41 at 7 (2010 WL 2680147, at *4 (N.D. Ill. June 30, 2010)). Since Judge Hibbler's certification of the class, the case has followed a circuitous path: the parties filed cross motions for summary judgment in July 2010, R. 42, R. 44; Judge Hibbler granted partial summary judgment for both Smith and Greystone on Count I and denied summary judgment on Count II, R. 104 (2011 WL 1303377 (N.D. Ill. Mar. 29, 2011)); Greystone filed a motion to reconsider the Court's ruling on summary judgment, R. 106; and Judge Hibbler vacated his summary judgment ruling "as it relate[d] to the . . . class claims [in Count I]," but not his ruling "in favor of Smith's individual claims [in Count I]." R. 112 at 7-8 (2011 WL 2160886, at *4-5 (N.D. Ill. May 27, 2011)). At Judge Hibbler's suggestion, R. 112 at 7, Greystone filed a motion to decertify the class, R. 114, which Judge Hibbler granted. R. 124. Smith responded with a motion to reconsider decertification. R. 125. The case was then transferred to Judge Shadur, R. 134, who granted Smith's motion to reconsider, and recertified the class. R. 138. Judge Shadur then authorized a notice that was sent to the class, R.

141, before again decertifying the class. R. 146. The case was then transferred to the undersigned Judge. R. 156. What we are left with is Smith as an individual plaintiff and Count II.

It is unusual for Greystone to move to dismiss claims that the Court has already addressed on summary judgment and dismissed in part. Particularly since Judge Hibbler *granted* partial summary judgment in *Greystone's favor*. Presumably, Greystone does not seek to have the Court reconsider that aspect of Judge Hibbler's ruling. Nevertheless, since it is apparent that Judge Hibbler did not vacate his grant of partial summary judgment "in favor of Smith's individual claims [in Count I]," R. 112 at 8—meaning that the Court has already ruled on Count I—Greystone's motion to "dismiss" must be deemed a motion pursuant to Federal Rule of Civil Procedure 60(b)(4) for relief from Judge Hibbler's grant of summary judgment to Smith on Count I because that judgment is void if the Court lacked subject-matter jurisdiction to issue it. Although neither party has characterized the procedural posture of the case or Greystone's motion in this fashion, it is the only characterization that makes sense to the Court considering Judge Hibbler's prior grant of summary judgment—partially in favor of Greystone—on a count of the complaint Greystone now seeks to dismiss.

Rule 60(b)(4) provides that the Court "may relieve a party or its legal representative from a final judgment [or] order [because] . . . the judgment is void." "Rule 60(b)(4) is primarily intended for cases where the suit in which the judgment sought to be vacated was entered was outside the jurisdiction of the district court."

3

*Marques v. Fed. Reserve Bank of Chi.*, 286 F.3d 1014, 1018 (7th Cir. 2002); *United States v. House*, 2010 WL 746771, at *2 (N.D. Ill. Mar. 2, 2010) ("Rule 60(b)(4) was intended to apply in cases where a district court issued a judgment but lacked jurisdiction . . . ."). The Court must address a challenge to its subject-matter jurisdiction "at any time and at any stage of the proceedings," even with respect to claims on which the court has already entered final judgment. *See Craig v. Ontario Corp.*, 543 F.3d 872, 875 (7th Cir. 2008) (instructing the district court to consider a Rule 60(b) motion challenging subject matter jurisdiction in a case already on appeal); *see also Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) ("Subject-matter jurisdiction can never be waived or forfeited."). Additionally, "[f]ederal courts lack subject matter jurisdiction when a case becomes moot." *Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011); *see also NML Capital, Ltd. v. Republic of Argentina*, 497 Fed. Appx. 96, 98, 2012 WL 4123151, at *1 (2d Cir. Sept. 20, 2012) ("Mootness defeats subject matter jurisdiction, and thus is a defect that cannot be waived."); *Yacobo v. Achim*, 2008 WL 907444, at *3 (N.D. Ill. Mar. 31, 2008) ("mootness [is] an issue of subject matter jurisdiction that cannot be waived"); *Rexam Beverage Can Co. v. Bolger*, 2008 WL 217114, at *6 n.2 (N.D. Ill. Jan. 22, 2008) ("mootness is not a waiveable affirmative defense, but rather a lack of subject matter jurisdiction over a claim"). "Therefore, once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright, under Federal Rule of Civil Procedure 12(b)(1), because he had no remaining stake." *Damasco v. Clearwire*

4

*Corp.*, 662 F.3d 891, 895 (7th Cir. 2011) (internal quotation marks and alterations omitted).

Here, the November 19, 2009 offer served to moot Count I of Smith's complaint. In Count I, Smith sought statutory damages under 15 U.S.C. §§ 1692e and 1692f, and reasonable attorneys' fees and costs. R. 1 ¶ 29. Smith's statutory damages are capped at $1,000 by 15 U.S.C. § 1692k(a)(2)(A).[1] On November 19, 2009, Greystone offered Smith "$1,500.00 in statutory and actual damages, and reasonable attorneys' fees and costs to be determined by the Court." *See* R. 178-1 at 12. Since Greystone offered Smith all the relief that she sought in Count I, the November 19, 2009 offer served to moot Smith's claims in Count I, depriving the Court of subject-matter jurisdiction. Because the Court lacks subject-matter jurisdiction over Count I, the Court must vacate its earlier grant of partial summary judgment to Smith, *see* R. 104, and dismiss Count I entirely.

The intervening motions and orders related to class certification do not alter the Court's analysis. Greystone made the November 19, 2009 settlement offer before Smith filed a class certification motion. The Seventh Circuit has made clear that an offer so timed to "satisfy the plaintiff's entire demand" moots the case. *See Damasco*, 662 F.3d at 895. That neither the parties nor the Court realized this fact and continued to litigate the case over the ensuing four years does not change the fact that Count I has been moot since November 19, 2009.

---

[1] The statute also provides that the Court will determine "a reasonable attorney's fee." 15 U.S.C. § 1692k(a)(3).

5

The same is true for Count II if the November 19, 2009 settlement offer for $1,500 satisfies Count II in addition to Count I. Statutory damages are not an issue because Smith's statutory damages are capped at $1,000 per case, not per violation. *See Raimondi v. McAllister & Assocs., Inc.*, 50 F. Supp. 2d 825, 828 (N.D. Ill. June 15, 1999) (citing *Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 651 (6th Cir. 1994) ("Congress intended to limit 'other damages' to $1,000 per proceeding, not to $1,000 per violation."); *Harper v. Better Bus. Servs., Inc.*, 961 F.2d 1561, 1563 (11th Cir. 1992) (same)).[2]

The question is whether, after subtracting $1,000 for statutory damages from the November 19, 2009 settlement offer, the remaining $500 is sufficient to satisfy Smith's claim for actual damages in Count II. Smith alleges in her complaint that Greystone called her three times between August 14 and September 8, 2009, and called her business partner at least three times in that time span. R. 1 ¶¶ 6-19. Smith also alleges that Greystone's efforts to collect her debt caused her to "suffer[] damage to her reputation, stress and inconvenience." R. 1 ¶ 34. Smith testified that she "suffer[ed] from lack of sleep, loss of appetite, and embarrassment," which she did not suffer before Greystone's actions. R. 185 at 15. Smith also testified that she was pregnant at the time and her doctor told her that the stress could harm her baby. R. 185 at 16. Smith has not presented any evidence beyond her own allegations and testimony.

---

[2] The Seventh Circuit does not appear to have addressed this issue, and the parties do not dispute this interpretation of the statute.

6

The Seventh Circuit has "maintained a strict standard for a finding of emotional damages because they are so easy to manufacture." *Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 609 (7th Cir. 2005). Further, the Seventh Circuit "require[s] that when the injured party's own testimony is the only proof of emotional damages, [s]he must explain the circumstances of [her] injury in reasonable detail; [s]he cannot rely on mere conclusory statements." *Id.* (internal quotation marks omitted). Additionally, "bare allegations by a plaintiff that the defendant's conduct made [the plaintiff] 'depressed,' 'humiliated,' or the like are not sufficient to establish injury unless the facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action." *Denius v. Dunlap*, 330 F.3d 919, 929 (7th Cir. 2003).

Here, Smith's allegations and testimony are insufficient to establish that she suffered any actual emotional damages, let alone more than $500 worth. Debt collection provides opportunities for debt collectors to unduly harass debtors; that is why Congress passed legislation to regulate such conduct. But Smith has presented no evidence beyond her own testimony that she actually suffered due to Greystone's conduct. Smith says that her stress was evident to family and friends, but she has not submitted affidavits or testimony from such people. Smith also says that her doctor told her that stress could harm her unborn child, but Smith has not submitted an affidavit from her doctor or any medical records. Additionally, Smith does not allege that Greystone threatened her or otherwise made inappropriate

statements when Greystone called her or her business associate. Telephone calls seeking repayment of a debt, absent additional allegations that the communications in those calls were "inherently degrading," *Denius*, 330 F.3d at 929, are an insufficient basis for the Court to infer that Smith suffered actual emotional damages.

Further, Smith's allegations that Greystone called her business partner several times also is not a circumstance so "inherently degrading" as to excuse Smith's failure to explain her emotional distress with more specificity. Courts in the Seventh Circuit have declined to award actual damages for similar conduct. *See Thompson v. Gateway Fin. Servs., Inc.*, 2012 WL 5989240, at *2, *4 (N.D. Ill. Nov. 29, 2012) (Kocoras, J.) (attempt to repossess car that served as collateral for debt during which debtor collectors used profane language and hit the car with a flashlight while the plaintiff and her family were in the car was not inherently degrading and plaintiff's testimony of emotional damage was an insufficient basis to award damages); *King v. CM Ass'n Group*, 2012 WL 400787, at *2 (N.D. Ill. Feb. 6, 2012) (Darrah, J.) (the plaintiff's testimony that the defendant told her she would be arrested if she did not pay the debt was an insufficient basis to award actual damages); *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808, 812-13 (N.D. Ill. 2010) (St. Eve, J.) (the defendant's 31 calls over the course of a 14 day period was an insufficient basis to award actual damages); *Crass v. Marval & Assocs. LLC*, 2010 WL 2104174, at *1 (E.D. Wis. May 25, 2010) (Adelman, J.) (repeated calls to the

plaintiff's work place and to the plaintiff's son's cell phone was an insufficient basis for actual damages).

Smith cites several cases similar to hers from outside this Circuit in which courts awarded actual damages. R. 185 at 17. But unlike Smith's case, the plaintiffs in those cases either submitted evidence in addition to the plaintiff's own testimony, or the plaintiff's allegations demonstrated that the defendant's conduct was "so inherently degrading," *Denius*, 330 F.3d at 929, as to make it reasonable for the court to infer that the plaintiff suffered emotional damages. *See Fausto v. Credigy Servs. Corp.*, 598 F. Supp. 2d 1049, 1055 (N.D. Cal. Feb. 17, 2009) ("Plaintiffs have provided their own deposition testimony and that of several other witnesses in support of Plaintiffs' emotional distress injuries."); *Valero v. Bryant*, 2011 WL 1438436, at *5 (E.D. Cal. Apr. 14, 2011) (plaintiff testified that (1) she was told that her "personal information . . . would be sold [at] public auction;" (2) she was told that she "was not fooling anyone but herself;" (3) "defendant's representative broke into a maniacal laugh" on a voice mail message; (4) "Defendant . . . called and yelled at Plaintiff's family members"); *Chiverton v. Fed. Fin. Group, Inc.*, 399 F. Supp. 2d 96, 102 (D. Conn. 2005) (the plaintiff testified that he feared that the defendant's calls to his workplace would cause the plaintiff to lose his job); *Howze v. Romano*, 1994 WL 827162, at *2 (D. Del. Dec. 9, 1994) (the defendant spoke with the plaintiff's daughter on the phone in a creepy manner, revealed that he already knew that the plaintiff had a daughter, attempted to convince the girl to reveal her age, and asked if the girl and her mother "look[ed] anything alike"). Smith does not

9

allege factual circumstances similar to the cases she cites. Thus, the $500 that Greystone offered to settle Smith's claim of actual damages was enough to satisfy that claim and moot Count II.

## Conclusion

For the foregoing reasons, the Court vacates its earlier grant of partial summary judgment to Smith, R. 104, the Court grants Greystone's motion to dismiss, R. 178, and the case is dismissed with prejudice.

ENTERED:

_Thomas M Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated: March 20, 2014